UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: ) | CASE No. | 15-20330 (JJT) |
| ) | | |
| ANDRE E. GRANT, ) | CHAPTER | 7 |
| DEBTOR. ) | | |
| ) | | |
| ) | | |
| ANDRE E. GRANT, ) | ADV. PRO. No. | 16-02019 |
| ) | | |
| PLAINTIFF ) | | |
| V. ) | | |
| ) | RE: ECF No. | 18, 25, 41 |
| UNITED STATES DEPARTMENT ) | | |
| OF DEFENSE, ) | | |
| ) | | |
| DEFENDANT. ) | | |
| ) | | |

**APPEARANCES**

Andre E. Grant                                                                                                  Debtor, *Pro Se*
44 Barber Street
Windsor, CT 06095

Lauren M. Nash, Esq.                                                                                  Attorney for the Defendant
157 Church Street
New Haven, CT 06510

Anthony S. Novak, Esq.                                                                                      Chapter 7 Trustee
280 Adams Street
Manchester, CT 06042

**MEMORANDUM OF DECISION AND ORDER
ON MOTION FOR CONTEMPT AND SANCTIONS**

I.  INTRODUCTION

Before the Court is the Motion For Contempt and Sanctions ("Motion for Contempt", ECF No. 18)[1] filed by the *pro se* Debtor, Andre E. Grant a/k/a Andre L. Lewis ("Debtor") against the United States Department of Defense ("DOD") for alleged violations of the Chapter 7 discharge injunction and automatic stay[2], effected by the Defense Finance Accounting Service ("DFAS") dispatch of collection notices and the temporary setoff of his IRS tax refunds to satisfy a debt owed it. For the reasons set forth below, the Motion for Contempt is DENIED.

II.  JURISDICTION

This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052. The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings pursuant to 28 U.S.C. § 1334(b), and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I). Venue is proper before the Court in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

III.  PROCEDURAL HISTORY

On March 7, 2016, the Debtor commenced an adversary proceeding against the DOD, alleging that it violated the Court's discharge injunction and the automatic stay. Thereafter, upon the Court's recommendation of the proper procedural vehicle to present the issues, on June 6,

---

[1] References herein to the docket of this adversary proceeding appear in the following form: "ECF No. ——." References herein to the docket of the above-referenced Chapter 7 case appear in the following form: "Case ECF No. ——."

[2] The Debtor orally withdrew his claim for damages under Section 362 during the hearing on the Motion for Contempt, and confined his request for relief to damages for the alleged violation of the discharge injunction under Section 524 caused by the offset of his 2015 tax refund. Tr. 1:27-28, 1:41. Accordingly, the Court will not address the merits of his claim for violations or damages under Section 362.

2016 the Debtor filed the instant Motion for Contempt. On August 26, 2016, the DOD filed its Memorandum in Opposition to Motion for Sanctions ("Opposition Motion", ECF No. 25). On September 27, 2016, a hearing was held where both parties appeared and were heard. The Court reserved for further proceedings any damages evidence beyond the allegations and submissions attached to the Debtor's Motion for Contempt, and took the matter under advisement.

On December 22, 2016, the Court issued an Order (ECF No. 33) reopening the proceedings. On December 27, 2016, the Court issued a Scheduling Order (ECF No. 36) setting trial dates for an evidentiary hearing, and directing the parties to submit supplemental briefs addressing: 1) whether the alleged automatic stay and discharge violations were sufficiently remedied by the DOD so as to justify no imposition of sanctions; and 2) whether the Debtor's alleged damages, loss and injury were: (a) causally related to the alleged violations, and (b) whether emotional damages are properly cognizable. In response to the Court's request, the DOD filed a Supplemental Memorandum in Opposition (ECF No. 41). On February 15, 2017, an evidentiary hearing was held on the Motion for Contempt and the issue of damages. The Debtor, his wife and a DFAS witness testified, and both parties submitted evidence and further arguments to the Court. At the conclusion of the hearing, the Court again took the matter under advisement.

IV.   FINDINGS OF FACT

Based upon the contentions of fact in the pleadings filed by the Debtor and the DOD, and upon the record of the September 27, 2016 and February 15, 2017 hearings[3], the Court finds the following material facts:

---

[3] References herein to the February 15, 2017 evidentiary hearing on the Motion for Contempt appear in the following form: "Tr. ___", and will refer to the corresponding audio file (ECF No. 46). Exhibits submitted by the DOD and the Debtor, and exhibits attached to the Complaint referenced herein will appear, respectively, in the form: "Gvt. Ex. ___", "Pl. Ex. ___", "Compl. Ex.___".

1. At an unknown time prior to 2006, the Debtor enlisted with the United States Army under the name Andre E. Grant. In or about March 2006, while on leave from the army, the Debtor changed his name from Andre E. Grant to Andre L. Lewis in the State of Connecticut.[4]

2. On or about December 6, 2007, the Debtor was arraigned, sentenced, confined and discharged from the United States Army by General Court-Martial Order Number 17 ("Court Martial") after pleading guilty to larceny, fraud, and other charges.[5] The Debtor was sentenced to 27 months confinement, discharged from the service with a bad conduct discharge, and ordered to forfeit all pay and allowances.[6]

3. On August 3, 2009, DFAS sent a letter to the Debtor informing him of its intent to collect a debt in the amount of $35,608.27, representing the overpayment of monies for housing fraudulently received by the Debtor, and the overpayment of pay or allowances while the Debtor was absent from the military without leave, including his period of confinement.[7] Due to nonpayment, in or around November of 2009, DFAS transferred the debt to the Treasury Offset Program ("TOP") for collection.[8]

4. On or about June 14, 2010, the Debtor called DFAS to dispute the debt and was advised to submit a request for review.[9] Three years later, on or around December 24, 2013, DFAS received a dispute request from the Debtor and began its investigation.[10]

5. On or around July 7, 2014, the Debtor called DFAS and, identifying himself as Andre L. Lewis, stated that the debt was not his, and although DFAS had the correct social security

---

[4] Tr. 1:22, 1:37-38.
[5] Gvt. Ex. 1.
[6] *Id*.
[7] Gvt Ex. 2.
[8] Tr. 2:11.
[9] Tr. 2:12-13; Gvt. Ex. 4.
[10] Tr. 2:13; Gvt. Ex. 4.

number, he was never in the military.[11] DFAS then requested copies of his social security card and other identification.[12] The same day, the Debtor sent an email to DFAS stating that the debt was "in no way associated" with him.[13] The Debtor attached to this email his social security card, Connecticut driver's license, and passport, all of which bore the name Andre L. Lewis.[14]

6. From July 2014 to February 2015, the Debtor made several calls to DFAS requesting information on the progress of the investigation and reaffirming that the debt was not his.[15]

7. On or about February 11, 2015, DFAS determined that the debt was valid and owed by the Debtor, and informed him that collection would continue.[16] Three weeks later, on March 4, 2015, the Debtor filed a Chapter 7 bankruptcy petition.[17]

8. The Debtor filed his petition under the name Andre E. Grant, and also disclosed his name change to Andre L. Lewis.[18] The Debtor's Schedule F listed the DOD as a creditor in the amount of $38,000.00.[19]

9. The matrix on the Debtor's petition indicates that service to DOD was made to its office located in St. Louis, Missouri.[20] The official DOD office where bankruptcy notices are sent and processed in normal course is located in Indianapolis, Indiana.[21]

---

[11] Gvt Ex. 4; Tr. 2:14.
[12] Gvt. Ex. 3, 4; Tr. 2:15.
[13] Id; Tr. 1:21.
[14] Gvt. Ex. 3, 4; Tr. 1:21, 2:14.
[15] Gvt. Ex. 4; Tr. 1:24, 2:15.
[16] Gvt. Ex. 4; Tr. 2:16.
[17] Case ECF No. 1.
[18] *Id*.; Tr. 1:38.
[19] Case ECF No. 1.
[20] *Id*.
[21] Tr. 2:35.

10. DFAS received notice of the Debtor's bankruptcy filing on March 12, 2015, and on the same day instructed the Treasury Department to remove his debt from TOP.[22] Due to a processing delay[23], DFAS was unable to remove the debt from TOP prior to the interception and setoff of his 2014 tax refund on or around March 31, 2015, in the amount $3,557.00.[24] DFAS requested a reversal of the setoff on or around April 1, 2015, and delivered it to the Debtor, in addition to a $17.00 Treasury Department fee, on or around April 24, 2015.[25]

11. A Chapter 7 discharge was entered in favor of the Debtor on June 10, 2015, and the bankruptcy case was subsequently closed on July 1, 2015.

12. After receiving notice of his bankruptcy discharge on September 29, 2015, DFAS sent the Debtor a letter notifying him of its intent to resume collection of the debt on the grounds that it was non-dischargeable.[26] It subsequently mailed him an account statement on October 30, 2015.[27] Due to nonpayment, on January 11, 2016, DFAS again referred the debt to TOP.[28]

13. On or around January 19, 2016, the Debtor called DFAS and again claimed the debt was not his, and inquired as to why it was not discharged in his bankruptcy.[29] After calling the Treasury Department and learning that his 2015 tax refund was or would be offset[30], the Debtor filed a motion to reopen the bankruptcy proceeding on February 4, 2016. The Court granted his motion, for cause shown, on February 10, 2016.

---

[22] Gvt Ex. 4; Tr. 2:17.
[23] DOD's witness testified that the delay occurred because TOP either intercepted the Debtor's tax refund before it received DFAS's request to remove the debt, or before it processed the request. Tr. 2:22.
[24] Tr. 2:20-22; Gvt. Ex. 4.
[25] Tr. 2:21.
[26] Tr. 2:22-24; Gvt. Ex. 4, 5; Joint Ex.
[27] Tr. 2:24-25; Gvt. Ex. 6
[28] Tr. 2:24-25; Gvt. Ex. 4.
[29] Tr. 2:24; Gvt. Ex. 4.
[30] Tr. 0:44.

14. On or around February 18, 2016, the Department of Treasury sent the Debtor a letter informing him that part of his tax refund was applied to a debt owed to DFAS.[31]

15. On or about February 19, 2016, DFAS received notice that the Debtor had reopened his bankruptcy, and the same day requested that his account be removed from TOP.[32]

16. Unbeknownst to DFAS, TOP had already offset the Debtor's 2015 income tax refund in the amount of $7,738.00 on or about February 18, 2016.[33]

17. DFAS requested a reversal of the setoff on March 11, 2016[34] and a refund in the amount of $7,738.00, as well as a $17.00 Treasury fee, were delivered to the Debtor on or around March 24, 2016. [35]

18. The Debtor did not claim an exemption in Schedule C of his Bankruptcy Petition for either his 2014 or 2015 tax refund. [36]

19. The Debtor did not disclose in the meeting of creditors, or on his petition that he was expecting a tax refund.[37]

20. None of the monies that the Debtor received from his 2014 and 2015 tax refund were turned over to the Chapter 7 Trustee.[38]

21. At no point during the pendency of his bankruptcy, or after the case was reopened, did the Debtor amend his Schedules.[39]

---

[31] Compl. Ex. 3; Gvt. Ex. 7.
[32] Tr. 2:27; Gvt Ex. 4.
[33] Tr. 2:28, 2:29; Compl. Ex. 3; Gvt. Ex. 4.
[34] Tr. 2:29; Gvt Ex. 4.
[35] Joint Ex.; Tr. 1:31, 2:29.
[36] Case ECF No. 1; Tr. 1:43-44.
[37] *Id*.
[38] Tr. 1:44.
[39] Case ECF No. 1.

22. From the inception of his debt to DOD to the conclusion of the February 15, 2017 hearing, the Debtor made no payments to DFAS or any other collection agency in fulfillment of his obligation.[40]

V. CONCLUSIONS OF LAW

The Motion for Contempt alleges that the DOD violated the automatic stay and discharge injunction by offsetting his tax refunds during the pendency of his bankruptcy, and by sending notices of intent to collect the debt following his discharge from bankruptcy. The Debtor asks that the Court hold DOD in contempt pursuant to 11 U.S.C. § 524(a)(2), and award actual damages, costs and attorney's fees, emotional damages, and punitive damages.

    A.  The Alleged Violation of the Discharge Injunction of Section 524(a)(2)

Section 524 provides that a discharge in bankruptcy operates as an injunction against any action "to collect, recover or offset any such debt as a personal liability of the debtor". 11 U.S.C. § 524(a)(2). One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables the honest but unfortunate debtor to receive a fresh start. *See Marrama v. Citizens Bank*, 549 U.S. 365, 367, 127 S. Ct.1105, 1107, 166 L. Ed. 2d 956 (2007). The Section 524 discharge injunction serves this function by protecting debtors from creditors' attempts to collect discharged debts after bankruptcy.

A plaintiff may bring a claim for a violation of the discharge injunction in the form of an action for a sanction of civil contempt. *Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007) ("[M]onetary relief sought by the plaintiffs in connection with [an] alleged breach of [S]ection 524(a) of the Bankruptcy Code is properly viewed as a sanction for civil contempt."); 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (Alan N. Resnick & Henry J.

---

[40] Tr. 1:30, 1:45, 2:10.

Sommer eds., 16th ed.) ("Civil contempt is the normal sanction for violations of the discharge injunction."). *See also In re Szenes*, 515 B.R. 1, 6 (Bankr. E.D.N.Y. 2014); *In re Griffin*, 415 B.R. 64, 74 (Bankr. N.D.N.Y. 2009). In order for this Court to make a finding of contempt, the burden rests with the movant to show by clear and convincing evidence that the offending entity had actual or constructive knowledge of the discharge and willfully violated it by continuing with the activity complained of. *See In re Cultrera*, 360 B.R. 28, 31 (Bankr. D. Conn. 2007); *In re Torres*, 367 B.R. at 490. A violation of the discharge injunction is willful where the creditor knew that the discharge had issued, and intended the actions that violated the injunction. *See In re DiGeronimo*, 354 B.R. 625, 642 (Bankr. E.D.N.Y. 2006).

"Compensatory damages, in addition to coercive sanctions, may be awarded as a sanction for civil contempt if a party willfully violates a section 524(a)(2) injunction." *In re Torres*, 367 B.R. at 490 (internal citations omitted). Attorney's fees may also be awarded, if in addition to willfully disobeying the court order, the "party acts in bad faith, vexatiously, wantonly or for oppressive reasons." *In re Dabrowski*, 257 B.R. 394, 416 (Bankr. S.D.N.Y. 2001).

    B.  Dischargeability of the Debt

In this instance, the appropriateness of sanctions or other awards turns principally upon whether the Debtor's debt was nondischargeable under Section 727, and whether the Debtor sufficiently proved his entitlement to damages as a result of that violation.  Section 523 provides, in pertinent part:

> (a) A discharge under 727…of this title does not discharge an individual debtor from any debt—
> …
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.
> 11 U.SC. § 523(a)(7).

The DOD contends that no violation of the discharge injunction occurred because the Debtor's debt was the result of a fine, penalty or forfeiture, as delineated in Section 523(a)(7), and is thus nondischargeable. The Court readily agrees.

The determination of whether a particular debt is a "fine, penalty or forfeiture" under Section 523(a)(7) is one of federal law. *See* 4 *Collier on Bankruptcy*, ¶ 523.13[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). To be nondischargeable, the debt must: (1) arise as a punishment or sanction for some type of wrongdoing by the debtor; (2) not be compensation for actual pecuniary loss; (3) be payable to a governmental unit; and (4) be for the benefit of a governmental unit. *Id*; *See* 11 U.S.C. § 523 (a)(7). A fine or condition imposed as part of the penal purpose of a criminal sentence is nondischargeable. *See Kelly v. Robinson*, 479 U.S. 36, 50–52, 107 S. Ct. 353, 361–62, 93 L. Ed. 2d 216 (1986).

Upon examination of the Court Martial[41] and the testimony adduced at trial, the Court finds that the Debtor's sentence ordering the forfeiture of all pay and allowances to the United Sates Army, confinement for 27 months and a bad conduct discharge, indisputably falls within the exception to discharge defined in Section 523(a)(7). His punishment was a result of his plea of guilty to a number of criminal charges, and the resulting debt, a forfeiture of pay and recoupment of fraudulently received monies, was payable to the United States Army.

Accordingly, the Court need not determine whether contempt is the appropriate sanction, because there was no violation of the discharge injunction. The discharge under Section 727(a) releases a debtor from his *dischargeable* debts, which, as the Court has already noted, does not include debts excepted from discharge under Section 523(a). *In re Worthing*, 24 B.R. 774, 778 (Bankr. D. Conn. 1982) (holding that [S]ection 524 cannot enjoin efforts to collect

---

[41] Gvt. Ex. 1.

nondischarged debts). The Debtor received a discharge on June 10, 2015 and thereafter, the DOD sent him three notices and intercepted his 2015 tax refund. As the obligation was nondischargeable, and the DOD was otherwise entitled to offset or administratively freeze his tax refund, neither the delivery of collection notices nor the offset of the Debtor's tax refund were violative of the discharge injunction. Indeed, DOD's reasonably prompt dispatch of the Debtor's tax refund was gratuitous and fortuitous here, as the Debtor received money in which he had no claim. Because the Debtor did not meet his burden of proving a willful violation, the Court will not impose sanctions or award the Debtor any damages.

Moreover, the Court notes that even if a violation did occur, it could not, upon this record, justify the imposition of sanctions against the DOD. Courts in the Second Circuit have refrained from issuing sanctions where the violations of the discharge order were technical, unintended, or quickly remedied. *See In re Cruz*, 254 B.R. 801, 816 (Bankr. S.D.N.Y. 2000); *see also Dabrowski*, 257 B.R. at 416 (holding that sanctions were not appropriate where creditor's actions were "technical and unintended."); *In re Thompson*, 2007 WL 2406886, at *4 (Bankr. N.D.N.Y. Aug. 21, 2007) (awarding no sanctions where action by creditor was "inadvertent" and "quickly corrected."). DOD's witness credibly testified that DFAS received notice of the Debtor's discharge on February 19, 2016. Notwithstanding that TOP had already offset the tax refund, DOD requested that the debt be removed from collection the very same day. The subsequent refund of the monies to the Debtor was both prompt and remedial, and lacks the earmarks of defiance that would otherwise justify sanctions.

The Debtor also testified that DOD's interception of his 2015 tax refund caused a number of injuries that entitle him to damages in the amount of $50,000.00, including: 1) he was evicted and forced to move into his wife's apartment; 2) he failed some of his college courses; 3) he had

to postpone back surgery scheduled for February 2016; and 4) his April 23, 2016 wedding was nearly delayed.[42] To the extent that these claims are for emotional damages, the Court notes that even if there was a violation, the Debtor did not prove his entitlement to damages because he did not show a causal link between his alleged injuries and DOD's actions. *See In re Haemmerle*, 529 B.R. 17, 30 (Bankr. E.D.N.Y. 2015) ("In order to sustain a claim for emotional distress damages, a debtor must prove a close causal connection between the harm and the stay/discharge violation.") (internal quotations omitted) (citing *In re McCool*, 446 B.R. 819, 824 (Bankr. N.D. Ohio 2010)). *See also In re Burkart*, Case No. 08–61077(DD), 2010 WL 502945 (Bankr. N.D.N.Y. Feb. 9, 2010). Accordingly, the Debtor's request for such sanctions and damages is denied.

        C.  Judicial Estoppel

The doctrine of judicial estoppel prevents a party from "asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993). "In the bankruptcy context, the rationale for these decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Kunica v. St. Jean Fin.*, Inc., 233 B.R. 46, 58 (S.D.N.Y. 1999) (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). Thus, courts have invoked judicial estoppel "to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." *Ibok v. SIAC–Sector Inc.,* 470 Fed. Appx. 27, 28 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Coffaro v. Crespo,* 721 F. Supp. 2d 141, 148 (E.D.N.Y. 2010)).

---

[42] Tr. 0: 48-0:52.

This doctrine applies when: "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *Oklahoma Firefighters Pension & Retirement System v. Student Loan Corp.,* 2013 WL 3212297, at *10 n. 6 (S.D.N.Y. June 25, 2013) (internal quotation marks omitted) (quoting *DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010)). In this Circuit, estoppel only applies "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir.1997)).

Here, the application of the doctrine of judicial estoppel also bars the Debtor's requested relief. First, the Debtor's current position—that he was injured by DFAS's interception of a tax refund that he was entitled to receive—clearly differs from his position at the time of filing his petition, under penalty of perjury, that those funds, or expectation thereof, did not exist. See *Ibok*, 2011 WL 293757, at *7 ("[Plaintiff]'s pursuit of this lawsuit is entirely inconsistent with his position in the bankruptcy court inasmuch as his pursuit of the lawsuit here is necessarily premised on his ownership of and standing to pursue the claims against the defendants"). Second, the bankruptcy court adopted the Debtor's representation that these funds did not exist when it discharged his debts and thereafter closed the bankruptcy case. *See Rosenshein*, 918 F. Supp. at 104–05 (finding that the bankruptcy court adopted debtors' position when it discharged debt on the basis of their incomplete disclosure of assets).

Finally, the Debtor would gain an unfair advantage at the expense of his creditors, including the DOD, because he would receive a benefit from a belated and wholly mistaken

claim of entitlement to assets he never disclosed. Disclosure of assets by a debtor is "essential to the proper functioning of the bankruptcy system," and "the Bankruptcy Code severely penalizes debtors who fail to disclose assets." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). Further, "undisclosed assets automatically remain property of the estate after the case is closed," *Id* (citing 11 U.S.C. §§ 554(c)-(d)); *accord Ayazi v. N.Y.C. Bd. of Educ.*, 315 F. App'x 313, 314 (2d Cir. 2009) and as a result, even after discharge of the bankruptcy estate, the debtor "lacks standing to pursue" a claim that he failed to disclose. *See*, *e.g.*, *Coffaro*, 721 F. Supp. 2d at148.

    It is undisputed that the Debtor here failed to disclose the existence or expectation of a tax refund as required under the Bankruptcy Code, and failed to amend his schedules during the pendency of the bankruptcy case, or after it was reopened.[43] It would violate the integrity of the bankruptcy process here to allow the Debtor to "obtain relief from the bankruptcy court by representing that no claims exist and then subsequently assert those claims for his own benefit in a separate proceeding." *Ibok*, 2011 WL 293757, at *6 (citing *Rosenshein*, 918 F. Supp. at 104). Thus, the elements of judicial estoppel are met.

    Judicial estoppel does not apply, however, if the Debtor's first position resulted from a "good faith mistake or an unintentional error". *Ibok*, 2011 WL 293757, at *7 (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 n. 2 (2d Cir.1999)). Although the Second Circuit has not established a standard to apply the good faith exception, courts in this circuit have ruled that failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has no knowledge of the claims, or no motive to conceal the claims. *See Azuike v. BNY*

---

[43] Case ECF No. 1.

*Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013); *Coffaro*, 721 F. Supp. 2d at 146; *Galin v. I.R.S.*, 563 F. Supp. 2d 332, 340 (D. Conn. 2008).

Applying that standard here, the Court cannot not conclude that the Debtor's failure to disclose his 2014 and 2015 tax refund was inadvertent. Schedule B, Personal Property, Line 21, explicitly requires the disclosure of tax refunds, and in that column, the Debtor indicated that there was none. The question of whether he had knowledge of the claim is answered by the Debtor himself who testified that, despite expecting a tax refund, he did not claim an exemption in it because he hadn't yet received tax documents for that year.[44] The Debtor also had motive to conceal the asset where, in the Trustee's hands, the funds would be distributed to creditors and could not be used for the Debtor's back surgery and wedding, which he testified was his plan for the funds.[45]. *See In re Lowery*, 398 B.R. 512, 516 (Bankr. E.D.N.Y. 2008) ("The public interest in the systemic integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that encourages the concealment of assets by debtors"). Accordingly, judicial estoppel erects an independent bar to the Debtor's claims for relief herein.[46]

VI. CONCLUSION

On the basis of the foregoing, the Debtor's Motion for Contempt and Sanctions is **DENIED**.

Dated at Hartford, Connecticut this 10th day of July 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[44] Tr. 1:43-44.
[45] Tr. 0:49-0:52.
[46] The Court is also mindful that the Debtor's deceptions include his unabated efforts to use his name change in order to mislead DOD and deter its collection efforts and to disavow his liabilities under the Discharge Order. In doing so, he has impaired his credibility in this Court and sullied his claims for equitable relief.